**Karl H. LANDES and E. Balint, Inc., Appellant,**

v.

**George M. HUMPHREY, Secretary of the Treasury, et al., Appellees.**

**No. 13402.**

United States Court of Appeals District of Columbia Circuit.

Argued April 22, 1957.

Decided June 13, 1957.

Mr. Raphael L. Elias, New York City, a member of the bar of the Court of Appeals of New York, pro hac vice, by special leave of court, with whom Mr. David P. Close, Washington, D. C., was on the brief, for appellants.

Mr. Andrew P. Vance, Atty., Dept. of Justice, with whom Asst. Atty. Gen., George C. Doub, Messrs. Oliver Gasch, United States Attorney, Melvin Richter, Atty., Dept. of Justice, and Edwin F. Rains, Chief Counsel, Foreign Assets Control, Treasury Deartment, were on the brief, for appellees. Mr. Lewis Carroll, Asst. U. S. Atty., also entered an appearance for appellees.

Before EDGERTON, Chief Judge, and PRETTYMAN and BASTIAN, Circuit Judges.

BASTIAN, Circuit Judge.

This is an appeal from the judgment of the District Court denying appellant's (plaintiff's) motion for summary judgment and granting appellees' (defendants') cross-motion. Appeal is also taken from an order denying appellant's motion for reconsideration and a rehearing of its motion for summary judgment.

Appellant sought an injunction and relief in the nature of a mandamus directing appellees to release 1300 bales of cassia (cinnamon) and permit its entry into the United States for consumption. The facts are as follows:

After the outbreak of the Korean conflict, the President and the Congress determined that importation of commodities from communist China, and the consequent flow of dollars to communist China, was contrary to the best interests of the United States. This national policy was effectuated by regulations [1] pursuant to the Trading with the Enemy Act, as amended, 40 Stat. 415, 50 U.S.C.A.Appendix, § 5. Under these regulations, cassia, a product traditionally imported from China, was excluded from the United States unless it originated in Vietnam (formerly Indo-China) or Indonesia. Cassia grown in China is gathered in that country and shipped to Hong Kong for grading, cleansing and assorting. Cassia grown in Vietnam is gathered there and sent to Saigon, from whence it too is shipped to Hong Kong for grading, cleansing and assorting. Consequently, it was important, if the Trading with the Enemy Act and the Regulations thereunder were to be effective, to provide a method to determine the country of origin of cassia shipped from Hong Kong.

Treasury Department officials consulted with representatives of the American Spice Trade Association, Inc., seeking a procedure by which cassia of non-Chinese origin could be distinguished from Chinese cassia. The president and co-owner of appellant was one of those consulted. He urged that the volatile oil content of the two types of cassia in question was different and, therefore, that a chemical test for volatile oil content should determine which cassia should be allowed to enter and which should be excluded. Though appellant's president urged this volatile oil test, he "went along with" other spice experts that importable and excludable cassia could be identified by taste, smell and appearance.

Appellees, after investigation, concluded that the volatile oil content was not a valid test of the origin of cassia, and instituted the procedure for physical examination (taste, smell and appearance) by a panel of spice experts. If a panel of experts believed a given lot of cassia to be of non-Chinese origin, it was to be admitted; otherwise, if the panel believed it to be of Chinese origin, it was to be excluded.

Having knowledge of and consequently, implicitly at least, acquiescing in this procedure, appellant applied for and recieved on May 18, 1953, from the Foreign Assets Control of the Treasury Depart-

---

1. *Foreign Assets Control Regulations* (§§ 500.101–505.808).

"§ 500.204 *Importation of and dealings in certain merchandise.* (a) Except as specifically authorized by the Secretary of the Treasury (or any person, agency, or instrumentality designated by him) by means of regulations, or rulings, instructions, licenses, or otherwise, no person subject to the jurisdiction of the United States may purchase, transport, import, or otherwise deal in or engage in any transaction with respect to any merchandise outside the United States if such merchandise is:

"(1) Merchandise the country or origin of which is China (except Formosa) or North Korea. * * *

"(2) Merchandise specified in this subparagraph unless such merchandise is imported directly from a country named as excepted for that type of merchandise:

| Type of merchandise | Exceptions |
|---|---|
| * * * * | * * * * |
| Cassia | Associated states of Cambodia, Laos and Vietnam (formerly known as Indo-China), Indonesia." |

ment licenses to import 4500 bales of Saigon cassia. Contained in the licenses was the following provision:

"Entry for consumption of the merchandise is also authorized, provided that no Collector of Customs is authorized to release the merchandise from Customs custody until after Customs has determined from physical examination of the merchandise, or a sample thereof, that the merchandise is not of Chinese origin within the meaning of the Foreign Assets Control Regulations."

At the time the licenses were granted, importation of cassia into the United States was, as above stated, prohibited except as permitted by such licenses. The prohibition adopted to exclude from the United States all goods imported from communist China is contained in Foreign Assets Control Regulations, supra note 1. Early in August 1953, the first 600 bales of this licensed cassia arrived in New York and a panel of experts, determining it to be non-Chinese in origin, permitted its entry for consumption.

In August 1953 Treasury officials had become convinced that the taste, smell and appearance test, even when performed by spice experts, was not reliable,[2] and on August 10, 1953, appellees cancelled all outstanding licenses for purchase and importation of Indo-Chinese cassia from the processing center at Hong Kong. However, all those to whom licenses had been issued were informed that consideration would be given to reissuance of any license under which shipment to the United States had been effected prior to the date of revocation, or to reissuance of any license pursuant to which an irrevocable letter of credit had been issued in payment for cassia purchased prior to revocation of the

license. Cassia imported under a reinstated license was to be examined in accordance with the procedure in effect at the time of the issuance of the original license "because although it was realized that the examination procedures had not been effective it was felt that the importers had purchased in reliance upon them, and, in the absence of demonstrable fraud on their part, the procedures should not be changed with regard to purchases which they had already made." Licenses issued after August 10, 1953, permitted future cassia to be imported if officials of the Indo-Chinese government certified the cassia purchased for import to the United States to be non-Chinese in origin. Appellant says with respect to the 1300 bales denied admission, which are now in warehouses in this country, that the certificate so required cannot now be obtained.

Appellant applied for and obtained reissuance of the licenses received by it on May 18, 1953, covering 3900 bales of cassia for which it had outstanding letters of credit but which had not arrived in this country prior to August 10, 1953. Upon arrival, this shipment was examined by a panel of experts, who originally found it to be of Chinese origin. After further examinations, 2600 bales were allowed entry, a majority of the panel having found them of non-Chinese origin. The remaining 1300 bales were not found by a majority of the panel to be free of Chinese cassia, and appellees' refusal to permit entry of these 1300 bales is the basis of this civil action.

Appellant contends, among other things, that appellees should not be permitted to refuse entry of these 1300 bales because they did not pass a test as to origin which appellees had found ineffective and had abandoned. The District Court, in a short memorandum, held:

---

2. This is established by the fact that the panel had allowed more cassia to enter, as being Saigon cassia imported from Hong Kong, than was exported from Indo-China to Hong Kong for processing. In fact, appellees tell us that appellant alone, during the period September 1952 through October 1953, imported into the United States, as Saigon cassia, far more than the total amount of cassia exported from Indo-China to Hong Kong during the years 1952 and 1953 together.

"Upon review of the pleadings, the affidavits and the exhibits, it is my opinion that the defendants were not arbitrary or capricious in setting up the procedures for determining the country of origin of the Cassia or in the execution of those procedures with respect to the 1300 bales of Cassia in dispute; or in refusing to accept the volatile oil content of Cassia bark as the basis for determination of its country of origin; or in denying entry into this country of the aforesaid 1300 bales of Cassia; or in refusing to permit a reexamination thereof.

"Under these circumstances, the court may not substitute its discretion for that of the defendants which they have exercised under the authority of the applicable statutes and regulations."

■ We agree. When appellant committed itself to the purchase and import of the cassia in question, it was with knowledge of the panel examination procedure and the fact that cassia would be denied entry unless Customs determined that it was not Chinese in origin. Under these circumstances, we cannot direct entry of this cassia. Appellees were within the area of reasonable discretion reposed in them under the Foreign Assets Control Regulations and the Trading with the Enemy Act, as amended, supra. Certainly, Customs did not determine, as was necessary to obtain entry of the cassia for consumption, "that the merchandise is not of Chinese origin within the meaning of the Foreign Assets Control Regulations."

■ Complaint is made that appellees have unreasonably denied appellant's request for re-examination of the cassia involved here. In view of the fact that this cassia was examined in the same manner as that of other importers in the same situation, denial of the request for re-examination does not seem unreasonable or arbitrary. We are told by appellant that competent scientists of appellees' selection could determine the origin of the cassia by microscopic examination of its cellular structure. So far as the record discloses, the test now suggested was not urged before the Treasury Department.

While we affirm the judgment of the District Court, we do so without prejudice to appellant's right to request of the Treasury Department an opportunity to establish that microscopic examination of cassia is determinative of the country of origin. We do not intimate any opinion as to whether such microscopic examination would constitute a fair test or whether such an examination should be ordered by the Treasury.

Affirmed.

EDGERTON, Chief Judge, concurs in the result.